## Jacob Hileman et al., Trustees, etc., v. Harlan P. Tuthill, Exr., etc.

1. WILLS—*Rules of Construction.*—In expounding a will great care must be taken by the expounder to avoid all extraneous influences in ascertaining the intention of the testator.

2. SAME—*Grammatical Sense of Words Used Adhered to Unless, etc.* —In the construction of a will the grammatical and ordinary popular sense of the words used by the testator are to be adhered to, unless such adherence leads to some absurdity, repugnance or inconsistency with the rest of the instrument.

3. SAME—*The Intention of the Testator Governs.*—It is the intention of the testator, as expressed in his own will, which governs; and this intention must be discerned through the words of the will itself, as applied to the subject-matter of the will and the surrounding circumstances; the plain and unambiguous words of the will must prevail and they are not to be controlled or qualified by any conjectural or doubtful constructions growing out of situation, circumstances or condition of the testator, his property, or the natural objects of his bounty.

Suit in Equity, for the construction of a will. Appeal from the Circuit Court of Union County; the Hon. ALONZO K. VICKERS, Judge, pre-

siding. Heard in this court at the February term, 1901. Affirmed. Opinion filed September 4, 1901.

Hileman & Sessions, attorneys for appellants.

John M. Lansden, D. W. Karraker and James Lingle, attorneys for appellee.

Mr. Justice Bigelow delivered the opinion of the court.

Charles M. Willard died on the 30th day December, 1893, at the age of seventy-seven years, leaving a last will and testament, executed about a month before his death. His nearest surviving relatives were a brother-in-law, the executor of his will, sisters-in-law, nephews and nieces. His estate consisted of lands valued at $50,000 and of personal property valued at about $18,000. He left debts to the amount of $4,000. In his lifetime deceased was a business man, being president of the First National Bank of Anna, Illinois, at the time of his death. He was one of the founders of the Union Academy, an institution of learning at that place.

The first clause of the will directs the payment of his debts and funeral expenses. The second, third, fourth and fifth clauses are devises of real estate, valued at about $33,000, to the Union Academy; and the sixth is a bequest of his library to the academy.

The seventh clause is a devise to appellee of a business block in Anna, valued at $16,000; in this block the bank is located of which the deceased was president at the time of his death; this devise is on condition that the devisee pay the sum of $5,000 to the First Presbyterian Church of Anna.

By the eighth, tenth, twelfth, thirteenth, fourteenth, fifteenth and sixteenth clauses, the sum of $9,000 is given in various amounts to his nearest relatives above mentioned.

It is the eighteenth and nineteenth clauses of the will which occasion the actual controversy in this case. The eighteenth clause reads as follows:

"18th. I hereby give and devise to the said Union Academy of Southern Illinois all the money, promissory

notes, accounts, stock in Anna Building and Loan Association, and stock in the Southern Illinois Fair Association which shall remain and belong to my estate after the full payment of all the sums of cash or money given and devised in clauses first, eighth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth and sixteenth of this my last will. Said money, promissory notes, accounts, stock in Anna Building and Loan Association, and stock in Southern Illinois Fair Association, shall, when converted into cash, be added to and form a part of the endowment fund of said Union Academy, and be subject to all conditions imposed on said fund in this will."

The nineteenth clause of the will is as follows:

"19th. I give and devise all the residue and remainder of my estate, real, personal and mixed, which I may own at the time of my death, or which may revert to me by reason of any contingency in this will, to Harlan P. Tuthill, Belle C. Barr, Mary B. Jenks and Laura M. Tuthill, in equal parts by valuation, to be divided by themselves after my death." * * *

The notes, accounts and stocks mentioned in the eighteenth clause were appraised and inventoried at the sum of $9,738.92. There was no "money" on hand at time of death. Of property not specifically mentioned in the will and therefore coming under operation of the nineteenth clause the deceased owned bank stocks to the amount of $7,534.50, Anna Lumber Co. stocks $500, other personal property $872, and real estate valued at $1,400, making a total of $10,306.50.

The debts, funeral expenses and money legacies mentioned in the eighteenth clause of the will amounted to $13,048.52; the executor, in settling the estate, used the proceeds of the notes, accounts and stocks mentioned in the eighteenth clause of the will, for the payment of debts and legacies, making up the deficiency from the property found in the nineteenth clause.

It is the contention of appellants that the bequest contained in the eighteenth clause is a specific one, and that therefore debts and legacies can not be charged against such bequest; that debts and legacies must be paid out of the

property mentioned in the nineteenth clause, inasmuch as it is residuary estate, and liable in the first instance for the payment of debts and legacies, if of sufficient value; if not, then the general money legacies contained in the eighth, tenth, twelfth, thirteenth, fourteenth, fifteenth and sixteenth clauses must proportionately abate, so as to leave the property mentioned in the eighteenth clause wholly intact. The contention of appellee is that by the express provisions of the will, debts and legacies are made a charge on the property enumerated in the eighteenth clause, so as to constitute that property the primary fund from which payments are to be made.

The construction contended for by appellants would amount to an actual elimination of the words " which shall remain and belong to my estate after the full payment of all sums of cash or money given and devised in clause first, etc., of this my last will," from the place where such words are found.

The insufficiency of property in the eighteenth clause of the will for paying debts and legacies, to say nothing of the endowment fund which the testator evidently intended to create by the will, is the fact which creates the frictional controversy in this case; if that fact is not considered, it is as plain as language can make it that a remainder is given by this clause of the will, and not any specific property at all, although this remainder is to come out of certain specified property. Did the testator own $4,000 at the time he wrote the will? Did he have any money at that time which might have formed part of the fund found in the eighteenth clause? If not, did he intend to die possessed of a sufficient amount of " money " so that the remainder, after paying debts and legacies, should, to use the language of counsel, "form something substantial for an 'Endowment Fund?'" He owned seventy-five shares of Anna Building and Loan Association stock; this class of stock, the statute provides, shall be issued for $100 per share. Hurd's Revised Statutes, 1899, Chap. 32, Sec. 83. The appraised value of the stock shows that only a part of the dues had

been paid. Did the testator intend, without expressing himself to that effect, that his executor should continue these payments after his death until the stock should arrive at the matured value of $7,500? In such case the assets of said clause would amount to $16,271.17, excluding the item of "money" which the testator at the time of the execution of his will may have intended to have supplied from other sources. The character of these conjectures show that the fact of the deficiency of the property found in the eighteenth clause is a mere circumstance to be considered by the court. To be guided by considerations of that kind would be to sail out into the illimitable.

"Great care must be taken that the expounder scrupulously avoid all extraneous influence in ascertaining the testator's intention. This must be gathered from the language employed in the instrument and from that alone. An eminent authority on testamentary law declares that 'the question in expounding a will is not what the testator meant, but what is the meaning of his words.' And text writers generally caution against the danger of insensibly substituting the expounder's views for the testator's intention by speculating upon what the testator may be supposed to have intended to do, instead of giving strict effect to his words. * * * The grammatical and ordinary popular sense of the words should be adhered to, unless it would lead to some absurdity or repugnance or inconsistency with the rest of the instrument." 2 Woerner's Law of Administration, § 414.

As formulated by another text writer, the same rule is stated to be:

"But it is the intention of the testator, as expressed in his own will, which governs; and this intention must be discerned through the words of the will itself, as applied to the subject-matter and the surrounding circumstances. In other words, the plain and unambiguous words of the will must prevail, and can not be controlled or qualified by any conjectural or doubtful constructions growing out of situation, circumstances or condition of the testator, his property or the natural objects of his bounty." Schouler on Wills, § 466.

We regard the eighteenth clause as it stands to be a clear

case of charging the payment of debts and legacies on certain specified property, in exoneration of other property which in a will differently constructed might have been primarily liable for such payment. The order in which legacies abate on deficiencies of assets, and the rule that the residuary legatee takes only after payment of debts and of general and specific legacies, are considerations which we think inapplicable to this will.

As a matter of both logic and grammar, the words " which shall remain and belong to my estate, after the full payment of all sums of cash or money given and devised," etc., are restrictive in their operation on the preceding language used by the testator, and this is so clearly the fact that no argument can make the matter plainer. The loss of the legacy intended for appellant's benefit does not spring out of a necessary repugnant use of the words just quoted; to the creation of the legacy itself the matter which causes the loss of the legacy is wholly extraneous, and of no necessary connection with the grammatical or logical frame-work of the eighteenth clause of the will.

The order of the lower court approving the action of appellee in charging the debts and legacies to the property, found in the eighteenth clause of the will, is affirmed.